May it please the Court, my name is Jeffrey Smith and I represent the appellate Deborah DiCostanzo. The issue before the court today is a federal rule of bankruptcy procedure, Rule 9019A motion, which was brought by the Chapter 7 trustee in a Chapter 7 case to compromise a claim over an asset of the trustee Deborah DiCostanzo. When the trustee brought her motion, she submitted what I would call a bare-bones declaration simply saying that a lawsuit had been filed to recover this asset, or the value of the asset in this case of residence, that a settlement agreement had been reached at a settlement conference and in the opinion of the trustee the settlement was fair and equitable. Deborah DiCostanzo objected to that settlement and presented to the court a plethora of evidence to support her position that the settlement was not fair and equitable under the proper test under Federal Rule of Bankruptcy Procedure 9019 and the two cases, the TMT Ferry case, which is the Supreme Court case that interprets that section or that rule, and the ANC Properties case, which is the Ninth Circuit case, which interprets that rule and essentially puts forth a four-part test that the court needs to consider based on the evidence before it as to whether a settlement is fair and equitable under that rule. At the proceedings in open court on the day of the hearing, the court took an unusual turn and rather than rule on the evidence before it as to whether or not the four-part TMT Ferry and ANC Properties case had been satisfied, the court shifted and, to use Judge Noggle's own words, in the bankruptcy court, recast the entire motion as a sale under 11 U.S.C. Section 363. In doing so, it is the appellant's contention that Judge Noggle committed error at that point. He committed legal error and reversible error. The reason in this case is because a 363 motion is handled in a completely different way. First of all, 363 was not the underlying motion. It was done sua sponte by the court. And as Deborah DeCastando attempted to point out at that hearing, the court was, by converting it to a 363 motion, the court in essence was putting apples and oranges before it. John DeCastando's offer to the court to pay approximately $95,000 for whatever right, title, and interest the estate had was conditioned upon a few things that Deborah DeCastando was not being offered in her attempt to match. First of all, he was allowed to leverage the very property that was the subject of the settlement to pay the estate for the settlement. Deborah DeCastando asked the court for the How could she have leveraged the property? She's not the titled owner. Correct. And this is where the slippery slope begins. Because her contention all along, and in her opposition under the 1919 grounds, was it wasn't his either. He had title, but she was putting in dispute his ownership interest. That was the nature of the underlying dispute. So by shifting to 363, you couldn't have a level playing field. But there's really no, if she'd gone into a bank or savings and loan and said, look, I'd like to borrow against this property, they would have laughed her out of there, wouldn't they? Correct. Absolutely. But John doesn't have the same problem, does he? No. Which is why it's not fair or proper to change it to a 363 motion. They are apples and oranges. Once the trustee offers to John, who is the only one who can borrow against the property, a settlement that envisions him borrowing against that property to fund the settlement, he's the only one. It's a false bid. 363, the idea with 363 is to create competitive bidding to bring up the price. The manner in which the court converted this to a 363 motion meant there was only going to be one bidder. Because he was the only one who could leverage that property. She was offered the property at 135, which is how the bankruptcy court valued the bid that he gave. It was the 95 plus the 40 in settlement of the brother's potential claims. Correct. So there was a bid available. If she bid 135 equal to that, then it was hers. Correct. And she said to the court, if I have the same opportunities that Jay does, it might have been different if Jay's offer was, I'm not going to use this estate asset to leverage the buyout of the estate asset. But that was part of the deal. I'm still having trouble understanding why that's unfair if he's the title property owner. Again, my problem is she can't go to the bank and borrow against this property. They will laugh her out of there. He will have no difficulty getting that loan because he is the title owner of the property. I understand that's in dispute. But all she's buying is a chosen action. All she's buying is a lawsuit. She's not buying a property. Correct. She's buying the claim to the asset. Right. And since the court... So all the presumptions under California are going to run in favor of him because he's been the title owner for all of these years. If the court had... This is exactly the issue. That the court skipped the analysis. The court skipped the analysis of whether or not John was taking advantage of his position as being a title holder. If John had come forward and said, I've got $95,000 in cash in an account here, would you have an argument here? Yeah. I still think the court cannot recast in the way it did, to use Judge A motion on the spot as a 363 motion. Why don't you then take... If you have the same objection, even if the court doesn't allow him to use the property to finance this, why don't you tell us what the problem is, what the real problem is? Because it sounds like the financing then really isn't sort of the fundamental issue. That's one of the problems. The other problem is that by skipping the analysis and recabling that, the court never heard evidence as to the appellant's primary position, which is that this property was conspired between the debtor and the debtor's father to take the property outside to call it separate property when it wasn't. And that issue was never reached in the divorce court because it punted to the bankruptcy court. And then Judge Noggle punted on at least even considering that evidence because he is required, this is a court of equity and the court is required to find out whether or not under the facts and circumstances of this case, fairness is being adjudicated. And he punted and said just highest offer, that's good. The appellant's position is this property was stolen from me in essence and then used to leverage a buyout that I couldn't match to keep it away from me. That is, in essence, her argument. She, and because the court never reached the four part AC properties test and never considered once the substantial evidence that she had put before the court to explain that that's what's going on, the court erred. And the evidence that was put forward by the trustee wasn't evidence of anything. It was just her opinion that it was a fair and equitable settlement. In fact, she uses the same words in her declaration in support of the motion. That's not evidence, that's just a conclusion. In the AC properties case, the court, I'm not suggesting that a bankruptcy court needs to have a five day hearing every time there's a proposed settlement. But in the AC properties case, that's exactly what happened. A 90-19 motion was before the court and in the record of the AC properties, ANC properties case, they had a five day evidentiary hearing to determine fair and equitable under that test. Again, I'm not suggesting that that has to happen in every bankruptcy case. But some analysis under the five, the four part fair and equitable test has to be conducted. Judge, in the bankruptcy court, didn't do that. Okay. You may want to save the rest of your time. I would like to do that. Thank you. Good morning, Your Honors. Arturo Cisneros of Malcolm Cisneros on behalf of the appellee and trustee, Patricia J. Zimmerman. Your Honor, to say that the court never considered the four pronged test of AC properties in the face of the district court's finding the lower record is just flat out wrong. The Judge Naga went through, he actually had two hearings on this. At the first hearing, we discussed the probability of success when he said they had no difficulty seeing this was a very difficult matter to try. It had been going on for six years. The complexity of litigation, he indicated that the parties would be litigating forever. This was like a law review article. He went on to talk about the math in terms of the settlement itself and the benefit to creditors. Here we started off with a proposed unsecured class of $150,000. We were able to cut that in half so that there was only $70,000 left of unsecured creditors and we were getting $95,000 to the estate. At the time we did this deal, under the assistance of another bankruptcy judge in Riverside who has a very good reputation for settling matters, we figured that we might have about an 80% payout to unsecured creditors at that time. By the time we got to the next hearing and all the evidence that was additionally submitted on behalf of Mrs. DiCostanzo, the percentage went down and that's why the court valued it at about $135,000, figuring that we were at that point probably around 50% to unsecured creditors and that's why they valued the $80,000 withdrawal at $40,000 and indicated $135,000 would be a quote-unquote overbid. But he did go through the AC factors. He did not make any mistakes. The district court found several points in the record where he dealt with the AC factors, but I think paramount is the creditors and the amount that the creditors would have received had the compromise been approved. Judge Nago did not abuse his discretion in finding that the trustee had made a good deal here and obviously by the record of these parties and the way that they had been litigating for that long of a period of time, the trustee also in the district court found that the trustee had made a good deal. I'm sure I'm missing something really obvious. Why wasn't Debra entitled to one half of the $95,000? Because community property and this asset was a community asset goes first to pay the creditors of the community. So the fact that... Jay's debts were considered to be her debts. Correct. And that's what gets paid first under 541. It all comes in and then it gets paid out. So in closing, I was at a seminar on Saturday where our new bankruptcy judge indicated that she was assigned the family law issues to tell us about and she said that they're very juicy and interesting, but when it comes down to economics, sometimes they don't make sense. And that's what this case is about. The action by Mrs. DiCostanzo has served no good purpose for the creditors. We're now at a very low percentage payout because of the actions that have been taken here and Mrs. DiCostanzo has a subordinated claim that the money will never get to, but the money has been paid and the claims have been withdrawn. And obviously the court did not err in ruling in the trustee's favor. Thank you, Your Honor. I think the other side. Oh, I'm sorry. Good morning, Your Honors. Ramsey Varsic for John DiCostanzo. I think it's been very well discussed already, but if there are any questions the court has for me, I'd be happy to address them with regard to the issues.          Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Okay. Very well. Thank you. We read the briefs. So oral argument is not where we get most of our learning. It's to answer questions. So absence of questions does not mean anything of significance. Sleeping might, but no. Two points in rebuttal to Mr. Cisneros' arguments. The idea that a pretty good payout for creditors is a substitute for the four-part TMT, FAERI, and ANC properties test is not the law. To say, well, we did a pretty good job, and we got a bunch of money, and that's good for creditors because we got some money is not enough. There is a required analysis, a four-part analysis, that the court is factually required to undertake that didn't happen. The district court did look at the record, though, and as counsel argued did conclude that without explicitly saying so, Judge Noggle did make the requisite analysis. Do you disagree with that? I do. Judge Noggle, nowhere in the proceedings did he make any effort to go through the individual factors. He punted to the 363 motion. And the other thing, very briefly, the argument was made that this was a good deal for creditors. Only two creditors voiced an opinion as to this settlement. Both of them objected to it. All other creditors were silent. Thank you. Thank you. Thank you, counsel. We appreciate the argument. It does help to get some clarification in these muddled areas. Case argued as submitted.
judges: Hall, Fisher, Bybee